Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3736 | **DATE** | 10/2/2001 |
| **CASE TITLE** | CAPLES vs. MEDIA ONE EXPRESS OF ILLINOIS et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, defendants' motion for summary judgment is granted. This action is dismissed in its entirety. All previously set dates are stricken. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 3 2001 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/2/2001 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | 01 OCT -3 AM 7: 53 | JS | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| LAKEISHA CAPLES, f/k/a | ) | |
| LAKEISHA L. RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDIA ONE EXPRESS OF ILLINOIS, INC. and | ) | No. 00 CV 3736 |
| AT&T CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DOCKETED OCT 3 2001

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Lakeisha Caples f/k/a Lakeisha L. Richardson, ("Caples") alleges that defendants Media One Express of Illinois, Inc. ("Media One") and AT&T Corp., discriminated against her on the basis of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"). On August 3, 2001, defendants filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For all the reasons stated herein, defendants' motion for summary judgment is GRANTED.

### STATEMENT OF FACTS[1]

In 1997, Caples began working at Media One in Media One's Elmhurst, Illinois facility. Caples first worked as a Customer Service Representative, and then as a Technical Support

---

[1] The following facts are undisputed and are taken from the defendants' Local Rule 56.1(a) and plaintiff's Local Rule 56.1(b) statements of material facts and accompanying exhibits.

1

33

Associate ("TSA") in the High Speed Data ("HSD") Department. Caples duties as a TSA included dispatching the company's internet service technicians to customers' homes and communicating with those technicians while the technicians were in the field. On January 28, 1999, Caples began a pregnancy-related leave of absence. Caples gave birth to twins on May 4, 1999.

In June 1999, while Caples was still on her pregnancy leave, Caples' direct supervisor, Cheryl Raguso ("Raguso"), informed Caples that Media One had decided to combine the internet dispatch function performed by the TSAs in HSD with the cable television dispatch function being performed by dispatchers in its cental Dispatch Department. Raguso explained to Caples that as a result of this decision all of the TSAs in HSD, including Caples, had been reassigned to the Dispatch Department, and scheduled to begin working there in early July 1999. Raguso told Caples the she should contact her new supervisor, Dispatch Department Supervisor, Marlene Berg ("Berg"), regarding returning to work.

Caples contacted Berg and Berg informed Caples that all of the dispatchers in her department were required to work a four ten-hour day schedule, which mirrored the technicians' schedules. Caples, who previously had worked a five eight-hour day schedule, told Berg that the new schedule was inconvenient for her due to her childcare arrangements, and that she would not be able to work the new schedule. Caples then contacted her former supervisor, Raguso, and inquired about returning to the HSD department as a Technical Support Specialist ("TSS"), a promotion from her prior position. Caples, however, never submitted a bid for the TSS position, as required in order to be considered for a promotion to that position. Ultimately, in mid-July 1999, Caples contacted Berg and told her that she was resigning and moving to Atlanta.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

I.  AT&T Corp. as a proper defendant

Title VII provides that it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). As such, for Caples to have a claim against AT&T Corp. under Title VII, AT&T Corp. must have been Caples' employer at the time of the alleged discrimination.

See Alexander v. Rush North Shore Medical Center, 101 F.3d 487, 492 (7th Cir. 1996)(holding that a plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action against a defendant).

In this case, since it is undisputed that Media One employed Caples at its Elmhurst, Illinois facility until Caples resigned in July 1999 and undisputed that Caples was never employed by AT&T Corp., defendants' motion for summary judgment is granted as to AT&T Corp. All claims asserted against defendant AT&T Corp. are dismissed with prejudice and defendant AT&T Corp. is hereby dismissed from this lawsuit.

II.     Caples' Pregnancy Discrimination Claim

In 1978, Congress amended Title VII to prohibit discrimination on the basis of pregnancy. Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 722 (7th Cir. 1998)(citations omitted). The PDA provides that "[w]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k); see Troupe v. May Dept. Stores Co., 20 F.3d 734, 735 (7th Cir.1994). While the PDA does not impose an affirmative duty on employers to offer maternity leave or to take other measures to assist pregnant employees, it does require an employer treat a pregnant employee as well as it would have if she were not pregnant. Piraino v. International Orientation Resources, Inc., 84 F.3d 270, 274 (7th Cir.1996). A plaintiff may establish a case of pregnancy discrimination through either direct or circumstantial evidence. Kennedy, 140 F.3d at 722-23 (citations omitted).

Since it is undisputed in this case that Caples has no direct evidence of any discrimination by Media One against her on the basis of her pregnancy, Caples must establish her prima facie case of pregnancy discrimination using the McDonnell Douglas burden-shifting approach. Under that

approach, plaintiff must establish a prima facie case of discrimination by demonstrating that (1) plaintiff was a member of a protected class; (2) plaintiff was performing to her employer's legitimate expectations; (3) despite her performance, plaintiff suffered an adverse employment action; and (4) other employees, similarly situated but not in the protected class, were treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). If plaintiff establishes a prima facie case, the burden shifts to the defendant who must produce a legitimate, non-discriminatory reason for plaintiff's treatment. Kennedy, 140 F.3d at 723 (citations omitted). Then plaintiff has the final burden to demonstrate that the proffered explanation is pretextual. See id. at 722-23 (citations omitted).

In this case, it is undisputed that Caples worked five days a week from 7:30 A.M. to 4:30 P.M. before she took pregnancy-related disability leave of absence from Media One but that upon her return to work, Caples was transferred to a different position working four ten-hour days until 11:00 P.M. Caples argues that her new shift ending at 11:00 P.M. constitutes an adverse employment action and since two other employees who transferred to the combined Dispatch Department at the same time as Caples received worked schedules that ended at 7:00 P.M., Media One violated the PDA[2].

Upon a complete review of the record in this case, reviewing the record in a light most favorable to Caples, Caples has failed to establish a prima facie case of discrimination under the PDA because there is insufficient evidence in the record to raise a genuine issue of material fact that Caples suffered an adverse employment action or that similarly-situated employees at Media One

---

[2] Since it is undisputed that Caples never applied for a promotion within Media One and because Caples does not oppose Media One's motion for summary judgment on the issue of whether Media One violated the PDA when Caples was not offered a promotion to a TSS, this court grants defendants' motion for summary judgment on this issue.

were treated more favorably than Caples[3]. Notwithstanding Caples' failure to demonstrate an issue of material fact as to her prima facie case, Caples has also failed to raise an issue of material fact showing that Media One's proffered legitimate nondiscriminatory reason for changing Caples' shift was a pretext for discrimination. Based on these findings, summary judgment in favor of Media One as to Caples' PDA must be granted as a matter of law.

A.  <u>Caples is a member of a protected class</u>

Neither side argues on this motion for summary judgment whether Caples had previously performed as a TSA to Media One's satisfaction. Instead, Media One argues that Caples cannot meet the threshold requirement of being a member of a protected class. Media One explains that in June 1999, when Media One allegedly denied her a promotion and when Media One changed her work schedule, Caples was not pregnant. Media One concludes that since Caples was not pregnant at the time of the alleged adverse actions then she is not protected under the PDA. Media One cites <u>Piraino v. Int.'l. Orientation Resources, Inc.</u>, 84 F.3d 270 (7th Cir. 1996) in support.

---

[3]The issues raised by Caples under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et. seq.* ("FMLA") in response to defendants' motion for summary judgment are not properly before this court and will be disregarded in their entirety. On August 22, 2001, in her memorandum of law in opposition to this motion for summary judgment, Caples for the first time raised a claim under the FMLA. Contemporaneously with filing her memorandum of law in opposition to this motion for summary judgment, Caples filed a motion for leave to amend the complaint seeking to add a FMLA claim. On August 28, 2001, however, this court denied Caples' motion for leave to amend the complaint. (See Docket #30). This court denied leave because leave to amend would have caused undue delay in these proceedings and undue prejudice to defendants. In addition, leave was denied because Caples' motion was made: (1) more than six months after the February 9, 2001 deadline for amending the pleadings had passed, a date agreed upon by the parties in their Form 35; (2) after discovery had been closed for two months; (3) after this motion for summary judgment had been filed; and (4) two days before plaintiff's opposition to this motion for summary judgment was due. This court's decision regarding this motion for summary judgment does not preclude Caples from properly seeking any other legal remedy not adjudicated here.

Media One's argument is without merit because <u>Piraino</u>, stands for the proposition that whether a former employee no was longer pregnant at the time of her discharge or at the time of former employer's refusal to reinstate her does not preclude a former employee from properly alleging that she was discharged and denied reinstatement because of her pregnancy. <u>Piraino</u>, 84 F.3d at 274. In this case, although the sequence of events that lead to the alleged adverse employment occurred after Caples' pregnancy, Caples properly alleges and there is sufficient evidence in the record to raise an issue of material fact that Media One may have burdened Caples' ability to return from maternity leave. See <u>Communications Workers of America, AFL-CIO v. Illinois Bell Tel. Co.</u>, 509 F.Supp. 6, 9 (N.D.Ill 1980)(Aspen J.)(holding that the failure to treat employees returning from maternity equal to non-pregnant employees returning from disability leave deprives female employees of employment opportunities and adversely affects their job status on the basis of sex).

B. <u>Caples did not suffer an adverse employment action</u>

In opposition to this motion for summary judgment, Caples argues that her new shift which ended at 11:00 P.M., four nights a week constituted an adverse employment action "on a common-sense view of things, . . . especially when contrasted to her [Caples'] pre-disability leave shift of 7:30 A.M. to 4:30 P.M." (Pl. Mem. in Opp. at 9). Caples cites to no legal authority in support of this "common-sense" argument.

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." See <u>Stockett v. Muncie Indiana Transit System</u>, 221 F.3d 997, 1001 (7th Cir. July 21, 2000)(quoting <u>Crady v. Liberty Nat'l Bank and Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993)).

"[A] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id. Upon a complete review of the record in this case, this court finds that a change in schedule, such as the change in schedule in this case, does not rise to the level of a materially adverse employment action without more evidence, which the record does not provide. In viewing all of the evidence in a light most favorable to Caples, Caples has failed to carry her evidentiary burden as to this third element of her prima facie case under the PDA. Caples' subjective preference for one work schedule in comparison to another does not by itself constitute an adverse employment action.

C. Media One did not treat similarly-situated persons more favorably than Caples

The standard for establishing that two people are "similarly situated" is strict: Caples must show that "she was treated less favorably than a nonpregnant employee under identical circumstances." Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1155 (7th Cir. 1997)(quoting Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1010 (7th Cir.1997)). Caples, therefore, must identify non-pregnant Media One employees, who took some sort of leave, returned to work, and was treated more favorably by Media One.

Caples identifies Media One employee Barbara Burrell ("Burrell") as a similarly-situated person who Media One treated more favorable than Caples. Caples states that Burrell returned from her non-pregnancy disability leave and was allowed to returned to the same shift Burrell worked before she left on leave. Additionally, Caples identifies Media One employees Maria Garcia ("Garcia") and Jerry Stek ("Stek") as similarly-situated person who Media One treated more favorably than Caples. Caples explains that both Stek and Garcia were transferred to the Dispatch

Department along with Caples but Stek and Garcia were given shifts of 8:00 A.M. to 7 P.M. instead of a shift ending at 11 P.M. Caples admits in making this comparison to Stek and Garcia, however, that their shift of 8 A.M. to 7 P.M. did not fit conveniently into Caples' family obligations, either, but that the 8 A.M. to 7 P.M. shift was at least more desirable than a shift ending at 11:00 P.M.

In response, Media One argues that Burrell is not similarly-situated to Caples because Burrell returned to Media One two months before all of the TSAs were transferred, therefore, Burrell's then-existing shift was available to her when she returned from her non-pregnancy leave. Additionally, Media One argues that Stek and Garcia are not similarly-situated to Caples because it is undisputed that neither Stek nor Garcia were returning from any type of leave when they were transferred into the Dispatch Department along with Caples.

Media One's arguments are consistent with the undisputed facts of this case, whereas, Caples' arguments concerning similarly-situated person are without substantiation in the record. Accordingly, Caples has failed to produce sufficient evidence in the record to raise an issue of material fact that similarly-situated employees at Media One were treated more favorably by Media One.

D.  Caples has failed to demonstrate that Media Ones proffered reasons are pretextual

Despite the fact that Caples has failed to carry her initial evidentiary burden under the PDA, Media One nonetheless produces a legitimate, nondiscriminatory reason as to why Caples' schedule was changed upon her return to work. Media One's reason is that all of the TSAs were transferred to the Dispatch Department and that of the TSAs were required to work a four ten-hour day schedule, which mirrored the technicians' schedules. In light of this legitimate nondiscriminatory reason offered by Media One, Caples has not produced any evidence in the record which establishes an

issue of fact that this reason is a pretext for discrimination.

Caples, in opposition to this motion for summary judgment, does not even attempt to argue that Media One's re-organization and subsequent change of TSA schedule is a pretext for discrimination. Caples' memorandum in opposition to this motion to dismiss simply concludes by stating that Media One has failed to give any justification whatsoever why Garcia and Stek were offered a shift which ended at 7 p.m. rather than a shift that ended at 11 p.m. (Pl.'s Mem in Opp. at 10). Under the PDA, however, Media One is not required to give a justification as to why Garcia and Stek were given one schedule and Caples' given another because it undisputed that neither schedule fit Caples' family obligations and because it is also undisputed that Garcia and Stek were not similarly-situated to Caples. Ultimately, in light of Media One's proffered reason, Caples has failed to raise a genuine issue of material fact that Media One took its employment actions for a forbidden reason.

## CONCLUSION

For the above stated reasons, defendants' motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice. All previously scheduled dates are stricken. All pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: October 2, 2001

10